UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-22270-EA

BENJAMIN J. COUSINS, M.D., P.A.,

    Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC., *et al.*,

    Defendants.
_____ /

## REPORT AND RECOMMENDATIONS

**THIS MATTER** comes before the Court on Plaintiff Benjamin J. Cousins, M.D., P.A.'s Motion to Remand to State Court. (ECF No. 8). This matter was referred to the undersigned by the Honorable Rodolfo A. Ruiz, II, United States District Judge, to take all action as required by law pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida. (ECF No. 15). Following the order of referral, this case was reassigned to the Honorable Ed Artau, United States District Judge, on September 18, 2025. (ECF No. 18). Upon careful review of the Parties' briefing, and being otherwise fully apprised of the record, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion to Remand, (ECF No. 8), be **GRANTED** and that the case be **REMANDED** to state court.

**I.**    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a provider of emergency medical services. Defendant Blue Cross and Blue Shield of Florida ("BCBSF") is licensed as an insurer providing health insurance coverage in the State of Florida. (ECF No. 1-2 at 3). Defendant Health Options, Inc. is BCBSF's health

1

maintenance organization affiliate. (*Id.*). Both BCBSF and Health Options, Inc. (collectively, "Florida Blue") insure or administer group health benefits plans for individuals covered under employer-sponsored health benefit plans governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"). (*Id.*).

Plaintiff first brought suit against BCBSF alone on May 24, 2024, alleging improper underpayment with respect to fifteen of Plaintiff's patients. *See* Case No. 2024-009597-CA-01 (Fla. 11th Cir. Ct.). Plaintiff amended its complaint several times at the state court level. Plaintiff's operative Third Amended Complaint, filed on May 7, 2025, names eleven "BCBS Entities" as defendants, including Defendant Health Options, Inc., and challenges Defendant's underpayment of the benefits of a combined thirty-eight patients treated by Plaintiff. Plaintiff asserts six Counts under Florida law: failure to reimburse a non-participating provider of emergency health care services at the usual and customary rate, under section 627.64194(4), Florida Statutes, (Count I); failure to pay the usual and customary rates of compensation under section 641.513(5), Florida Statutes, (Count II); breach of contract, (Count III); quantum meruit, (Count IV); account stated, (Count V); and unjust enrichment, (Count VI). *See* (ECF No. 1-1 at 269–79). Upon review of the Third Amended Complaint, Florida Blue learned that two of Plaintiff's patients, Patient 13 ("S.B.") and Patient 21 ("O.L."), were insured beneficiaries of ERISA plans.

Defendants Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc. then removed the action from the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, to the United States District Court for Southern District of Florida pursuant to 28 U.S.C. §§ 1331, 1367, and 1446.[1] (ECF No. 1). Defendants claimed that removal of the action was

---

[1] Plaintiff argues that Defendants' removal was procedurally defective because the other nine defendants named in the Third Amended Complaint have not been served with process and did not consent to the case's removal from state court. Below, I find that Plaintiff's claims do not trigger complete preemption under ERISA and therefore do not state a federal question. Accordingly, I do not reach the Parties' separate dispute over whether Florida Blue's

2

proper because Plaintiffs' Third Amended Complaint "presents a federal question under the [ERISA] . . . complete preemption doctrine." (*Id.* at 2). Defendants contend that Plaintiff "could have—and, indeed, should have—brought its claims related to Florida Blue's members who are covered under an ERISA-governed benefit plan pursuant to ERISA" because "no other legal duty supports Plaintiff's claims relative to those plans, irrespective of how Plaintiff labels its claims." (ECF No. 1 at 2).

Plaintiff filed the present Motion to Remand on July 21, 2025, (ECF No. 8), arguing that its claims were not completely preempted under section 502(a) of ERISA. Defendant filed a Response, (ECF No. 9), to which Plaintiff filed a Reply, (ECF No. 10). Plaintiff's Motion is now ripe for review.

## II.   LEGAL STANDARD

"[F]ederal courts are courts of limited jurisdiction: When they do not have (or no longer have) authorization to resolve a suit, they must hand it over." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also* 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1447(c), district courts must remand cases to state court when subject matter jurisdiction is lacking. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). On a motion to remand, the burden of establishing federal subject matter jurisdiction is on the party removing to federal court. *Miami Beach Cosm. & Plastic Surgery Ctr. v. Blue Cross & Blue Shield of Fla., Inc.*, 947 F. Supp. 2d 1375, 1379 (S.D. Fla. 2013) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)).

---

removal of the action prior to the remaining named BCBS Entities' receipt of service satisfies the "unanimity rule" or else requires remand.

Removal statutes are to be strictly construed. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32–33 (2002). "[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." *Univ. of So. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). When determining whether a case should be remanded, the Court "accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Orthopaedic Care Specialists, P.L. v. Cigna Health & Life Ins. Co.*, No. 20-82142-CIV, 2021 WL 389130, at *1 (S.D. Fla. Jan. 15, 2021) (citing *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, No. 18-233, 2018 WL 3640405, at *1 n.1 (M.D. Fla. July 20, 2018)). As a general rule, in determining removal jurisdiction, federal courts apply the "well-pleaded complaint" rule, which allows federal jurisdiction "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.,* 482 U.S. at 392.

Enter the "complete preemption" doctrine under ERISA. *See* 29 U.S.C. § 1132(a). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Pursuant to that purpose, Congress included "expensive pre-emption provisions . . . intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quotation omitted). Complete preemption under ERISA provides an "exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337,

1344 (11th Cir. 2009). Complete preemption derives from ERISA's civil enforcement provision, section 502(a). 28 U.S.C. § 1132(a). Section 502(a) provides that "[a] civil action may be brought . . . (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 28 U.S.C. § 1132(a). Thus, "'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.'" *Davila*, 542 U.S. at 209 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

### III. DISCUSSION

To determine whether complete preemption applies, the Court must apply the two-part test set forth by the Supreme Court in *Aetna Health, Inc. v. Davila*. *See Conn. State Dental*, 591 F.3d at 1345. "The *Davila* test asks (1) whether the plaintiffs could have ever brought their claim under ERISA § 502(a) and (2) whether no other legal duty supports the plaintiffs' claims." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) (citation omitted). The first step of the Davila test asks two questions: (1) whether the claims fall within the scope of ERISA § 502(a); and (2) whether ERISA grants the plaintiff standing to bring suit. *Id.*; *see also Orthopaedic Care Specialists*, 2021 WL 389130, at *2.

In determining whether claims fall within the scope of ERISA § 502(a), the Eleventh Circuit has adopted a "rate of payment" versus "right of payment" distinction. *Conn. State Dental*, 591 F.3d at 1350; *Hialeah Anesthesia Specialists, LLC v. Coventry Health & Care of Fla., Inc.*, 258 F. Supp. 3d 1323, 1327 (S.D. Fla. 2017). This line of precedent explains that "claims involving only underpayment are not preempted", while "claims that were partially denied because coverage was not afforded for all the submitted procedures may be preempted." *See Conn. State Dental*, 591 F.3d at 1349–50; *see Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Fla., Inc.*,

5

No. 08-cv-686, 2008 WL 3833236, at *5 (M.D. Fla. Aug. 13, 2008) (finding claim not completely preempted where plaintiff healthcare providers challenged "whether Defendants reimbursed the providers at a rate consistent with Florida law," as opposed to "the denial of benefits under an ERISA plan") (citing *Med. & Chirurgical Fac. of State of Md. v. Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d 618, 621 (D. Md. 2002) ("What is at issue is the amount of payment, and the source for that determination is the states, not the HMO plans.")); *see also Hialeah Anesthesia Specialists, LLC*, 258 F. Supp. 3d at 1229.

### A. Plaintiff Brings a Rate of Payment Rather than a Right of Payment Claim

Defendant argues that this case reflects a "right of payment" rather than a "rate of payment" dispute. (ECF No. 9 at 19–20). Defendant contends that Plaintiff's "thread bare" assertions that its claims are "rate of payment" disputes should be rejected, particularly "in the face of [Plaintiff's] breach of contract claim[]." (*Id.* at 20) (citations omitted). Plaintiff, for its part, maintains that its claims "center upon Defendants' failure to reimburse the 'usual and customary' amounts due for this geographic area" as set forth under Florida law. (ECF No. 8 at 2); (ECF No. 10 at 3).

Review of Plaintiff's Third Amended Complaint supports Plaintiff's argument that it fundamentally seeks to obtain the proper rate of payment from Defendants in this action. The Complaint does not seek to determine Plaintiff's Patients' entitlement to benefits. Plaintiff, a nonparticipating provider of emergency services, asserts that it "invoiced $586,676" in reimbursements, but that the named defendants in the Third Amended Complaint "paid only $20,941.91." (ECF No. 1-1 at 216 ¶ 32). Plaintiff alleges that the BCBS Entities' payment of "a portion of the total rate due" evidences "that the SERVICES are covered under the INSURANCE POLICIES." (*Id.* ¶ 33). Thus, Plaintiff's claim appears to concern not the *right* to benefits, which the Third Amended Complaint does not allege are in dispute, but the named Defendants' "fail[ure]

6

to pay the proper rate of payment under section 641.13, Florida Statutes, and section 627.64194(4), Florida Statutes. (*Id.* ¶ 35). Indeed, each Count of the Third Amended Complaint seeks relief in the form of payment at the proper rate under Florida law. *See* (*id.* at 268 ¶ 383, 271 ¶¶ 405–06, 274 ¶ 429, 276 ¶ 439, 277 ¶ 451, 279 ¶ 465). Plaintiff's claims are akin to a rate of payment dispute because Plaintiff does not allege that Defendants "failed to pay," but rather that Defendants' grossly underpaid Plaintiff for the services for which Plaintiff sought reimbursement. *See REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3323817, at *3 (S.D. Fla. Jul. 6, 2018).

Exhibits to the Third Amended Complaint confirm that the Parties' dispute is at bottom about the proper rate of payment owed. Florida Blue issued significantly reduced payments to Plaintiff. *See, e.g.*, (Ex. D, ECF No. 1-1 at 372–76). Plaintiff communicated to the BCBS Entities its understanding that benefits payments had been improperly reduced by a significant margin due to the BCBS Entities' determinations that the billed charges were more than the usual and customary rate for certain procedures or items. *See, e.g.*, (Ex. C, ECF No. 1-1 at 297–305). Following Plaintiff's administrative appeal, Florida Blue notified Plaintiff of its determination "that the claim processed and paid correctly in accordance with the terms of the applicable health plan contract and medical policy guidelines. Specifically, CLAIM PRICED CORRECTLY." (Ex. D, ECF No. 1-1 at 377). Questions of Plaintiff's entitlement to payment in the first instance, meanwhile, are lacking from the Third Amended Complaint and its exhibits. Applying the *Connecticut State Dental* test leads to the conclusion that this dispute is one over the rate of payment, not over the entitlement to benefits. *Conn. State Dental*, 591 F.3d at 1350; *Hialeah Anesthesia Specialists, LLC*, 258 F. Supp. 3d at 1329–30. Accordingly, Plaintiff's claims fall outside the scope of section 502(a) of ERISA.

### B. Plaintiff Does Not Have Derivative Standing to Bring Claims Under the ERISA Plans

"[H]ealthcare provider claims are usually not subject to complete preemption because '[h]ealthcare providers . . . generally are not considered "beneficiaries" or "participants" under ERISA.'" *Conn. State Dental*, 591 F.3d at 1346 (quotations and citations omitted). "[A] healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." *Id.* at 1347 (citations omitted). The Eleventh Circuit has held, however, that "a healthcare provider is barred from bringing claims under § 502(a) based on an assignment from a plan participant or beneficiary" where "a plan contains an unambiguous anti-assignment provision." *Griffin v. United Healthcare of Ga., Inc.*, 754 F. App'x 793, 796 (11th Cir. 2018) (citing *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1296 (11th Cir. 2004)); *see also Richard W. Kaplan, DDS, MD, PA v. United Healthcare Servs., Inc.*, No. 19-81185-CIV, 2019 WL 13255597, at *4 (S.D. Fla. Dec. 31, 2019).

Florida Blue argues that Plaintiff has derivative standing to sue by virtue of Assignments of Benefits executed between Plaintiff and the 38 Patients to whom Plaintiff provided emergency services. (ECF No. 9 at 8–9). Defendants attached to their Notice of Removal, (ECF No. 1), the Declaration of Juanisha Jones, a litigation management consultant for Defendants. (ECF No. 1-2). Included as internal exhibits to the Declaration are the ERISA plans of Patients 13 and 21, respectively, upon whose plans Defendants' removal was premised. *See* (ECF No. 1 at 13). Each plan contains an express anti-assignment provision that prohibits a plan beneficiary from assigning benefits under the plan to a medical-care provider without Defendant BCBS of Florida's written consent. *See* (Ex. A, ECF No. 1-2 at 25) (providing that Patient 13 "may not assign, delegate or

8

otherwise transfer this Policy and the obligations hereunder without [Defendant's] written consent" and that "[a]ny assignment, delegation, or transfer made in violation of this provision shall be void"); (Ex. B, ECF No. 1-2 at 285) (same, with respect to Patient 21). Because the Plans provided by Defendants contain explicit anti-assignment provisions, this Circuit's precedent dictates that Plaintiff lacks standing to bring the § 502(a) claims Defendants perceive Plaintiff to be bringing. *Kaplan*, 2019 WL 13255597, at \*4; *cf. de la Pedraja v. Neighborhood Health P'ship, Inc.*, No. 10-cv-21679, 2010 WL 11504338, at \*4 (S.D. Fla. Jul. 23, 2010) (finding that healthcare provider had derivative standing to sue under ERISA where the Court was "not aware of any anti-assignment provision in the relevant plans").

  C. **An Independent Legal Duty Exists**

Plaintiff maintains that the Third Amended Complaint's claims have an independent basis in the form of Florida Statutes, sections 641.513(5) and 627.64194(4). "Section 641.513(5) is aimed at protecting non-participating providers who must provide emergency medical services to HMO subscribers, ensuring they are compensated fairly." *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006). The statute imposes a duty on HMOs to reimburse out-of-network emergency medical providers, who may sue thereunder, and that is independent of any ERISA plan, participant, or fiduciary. *See Orthopaedic Care Specialists,* No. 12-81148-CIV, 2013 WL 12095594, at \*2 n.5; *Emergency Servs. of Zephyrhills, P.A. v. Coventry Health Care of Fla., Inc.*, 281 F. Supp. 3d 1339, 1346, 1348 (S.D. Fla. 2017) (collecting cases) (finding that plaintiffs' claims "plainly" did not fall within the scope of section 502(a) where the claims "[did] not seek to recover, clarify, or enforce rights under" ERISA plans).

Section 627.64194 states that "[a]n insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance

with the coverage terms of the health insurance policy," and "must reimburse a nonparticipating provider of services" as specified in section 641.513(5). As with section 641.513(5), courts have found that claims brought under section 627.64194 impose a legal duty "that is not tied in any way to a patient's healthcare benefits under an ERISA plan." *See, e.g.*, *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1300 (S.D. Fla. 2021) (citing *Kaplan*, 2019 WL 13255597, at *4); *see also Emergency Servs. of Zephyrhills, P.A.*, 281 F. Supp. 3d at 1348.

There remains the matter of Plaintiff's breach of contract count. Defendant maintains that "Plaintiff brings an ERISA claim because Florida Blue (and Unserved Defendants) breached the at issue insurance contracts (the plans) by failing to reimburse Plaintiff after it allegedly provided 'covered' services under those plans[.]" (ECF No. 9 at 17). In asserting that "[e]ach BCBS Entity is obligated to pay the usual and customary rates of compensation," Plaintiff does indeed allege that those entities' "failure and refusal to make the monetary payments here at issue constitutes a breach of the INSURANCE POLICIES which have by law incorporated the [Florida] statutory provisions therein." (ECF No. 1-1 at 274 ¶ 429–30). Defendants perceive Plaintiff to be suing to redress a breach of its thirty-eight patients' respective insurance policies, including the ERISA plans. *See* (ECF No. 9 at 6).

As recounted above, Plaintiff lacks standing to sue for breach of the insurance policies held by Patients 13 and 21, because those insurance policies included explicit anti-assignment provisions. *See Physicians Multispecialty Grp.*, 371 F.3d at 1296; *Kaplan*, 2019 WL 13255597, at *4. Additionally, it is unclear whether Plaintiff's breach of contract claim seeks to enforce the insurance policies of Plaintiff's patients or a contract implied in fact. In *Emergency Services of Zephyrhills*, for instance, the district court found that healthcare provider plaintiffs' claims were

supported by an independent legal duty where the plaintiffs sued the defendant "on their own behalf for its violation of independent statutory and *quasi-contractual obligations owed to Plaintiffs under Florida law*[.]" 281 F. Supp. 3d at 1347–48 (emphasis added). On a motion to remand, ambiguity as to what contract Plaintiff purports to sue under must be construed in Plaintiff's favor, *Orthopaedic Care Specialists, P.L.*, 2021 WL 389130, at *1, particularly where Plaintiff lacks standing to bring a claim of breach of Patients 13 and 21's insurance policies. Upon review of the applicable precedent and the record, the undersigned finds that ambiguity as to Plaintiff's breach of contract claim supports remand.

## IV.  CONCLUSION

Per the Third Amended Complaint, and as Plaintiff has maintained throughout the briefing on the Motion to Remand, Plaintiff attempts to remedy Defendants' alleged failure to pay the appropriate rate of reimbursement under Florida state law—a claim falling outside of section 502(a)'s ambit. Defendants have not met their burden to demonstrate that Plaintiff's claims "are all facially ERISA claims masquerading as Florida state law claims," (ECF No. 9 at 8), such that this case should proceed in federal rather than state court.

Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion to Remand, (ECF No. 8), be **GRANTED**, and that this case be **REMANDED** to the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. The Court should direct the Clerk of Court to take all necessary steps and procedures to effect remand of the above-captioned action.

Pursuant to Local Magistrate Rule 4(b), the parties have **FOURTEEN (14) days** from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Ed Artau, United States District Judge.  Failure to timely file objections will bar a *de*

*novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

    **RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida, this 21st day of January, 2026.

                                                                       _____
                                                                       LAUREN F. LOUIS
                                                                       UNITED STATES MAGISTRATE JUDGE